UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

David Manderson and David Frary, as Trustees of the
I.B.E.W. 292 Health Care Plan,

    Plaintiffs,

vs.

Fairview Health Services and
BCBSM, Inc. d/b/a Blue Cross
and Blue Shield of Minnesota,

    Defendants.

_____

Civ. File No. _____

**COMPLAINT**

Plaintiffs, for their Complaint against Defendants Fairview Health Services and BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota, state and allege as follows:

## IDENTITY OF PARTIES, JURISDICTION, VENUE

1.    Plaintiffs David Manderson and David Frary, and any successors, are Trustees of the I.B.E.W. 292 Health Care Plan ("the Plan"). The Plan is a multiemployer, jointly-trusteed Taft-Hartley fringe benefit plan created and maintained pursuant to Section 302(c)(5) of Labor Management Relations Act, 29 U.S.C. §186(c)(5) and subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1000, *et seq*.

2.    Plaintiffs David Manderson and David Frary, or any subsequently appointed successor(s), are Trustees and fiduciaries for the Plan in accordance with ERISA § 3(21), 29 U.S.C. § 1002(21).

3. The Plan is an employee welfare benefit plan, as defined in Section 3(1)(d) of ERISA, 29 U.S.C. § 1002(2).

4. The Plan provides health and welfare benefits, including medical and hospital benefits, to Plan participants and their dependents, including participants and dependents or beneficiaries who reside in the State of Minnesota, in accordance with the terms and conditions contained in the Plan's governing documents, including its Trust Agreement and Plan Document and Summary Plan Description ("Plan Document").

5. Defendant Fairview Health Services is a registered Minnesota business non-profit corporation with a registered address of 1010 Dale Street North, St. Paul, MN 55117. Defendant Fairview Health Services provides medical, surgical, illness and other health-related services to individuals in the state of Minnesota.

6. Defendant BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota ("BCBS") is a nonprofit health service plan corporation in Minnesota and an independent licensee of the Blue Cross Blue Shield Association. It is headquartered at 3535 Blue Cross Road, Eagan, Minnesota 55122.

**JURISDICTION AND VENUE**

7. This is an action brought by the fiduciaries under ERISA §502(a)(3) to obtain appropriate equitable relief and to enforce the terms of the Plan Document. Subject matter jurisdiction over this controversy, therefore, is conferred upon this Court, without regard to the amount in controversy by ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Jurisdiction is also proper under 28 U.S.C. § 1331, in that the Plan brings this action under federal common law and 28 U.S.C. § 2201(a) for a declaration that it

is not liable to pay or cover medical expenses being sought by Fairview Health Services for certain expenses incurred when providing medical treatment to a covered Plan beneficiary.

8. Claims asserted against Defendant BCBS in this action are supplemental state law claims which are so related to claims over which this Court enjoys original jurisdiction, and are part of the same case or controversy as claims for which this court has original jurisdiction, that subject matter jurisdiction is therefore conferred pursuant to 28 U.S.C. §1367.

9. The employee benefit plan for which Plaintiffs are Trustees is administered in Hennepin County, Minnesota and therefore, venue is proper in this court pursuant to ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2).

## FACTUAL BACKGROUND

10. Plaintiffs restate the facts and allegations set forth in paragraphs 1-9.

11. Between January 1, 2017 and December 31, 2019, the Plan and BCBS were parties to Claims Processing Services Agreements ("Servicing Agreements") under which BCBS agreed to provide certain claims processing and adjudication services on behalf of the Plan for medical claims submitted by medical providers seeking payment for plan benefits.

12. The Servicing Agreements provided that BCBS would make available to eligible persons covered by the Plan access to healthcare services and providers participating in the BCBS's provider network.

13. The Servicing Agreements required that when fulfilling its obligations to the Plan, BCBS was required to follow the specific terms of the Plan Document, and would direct all questions regarding Plan coverage and interpretation to the Fund's Claim Administrators for Plan determination.

14. The relevant provisions of the Plan Document for this dispute relating to coordination of benefits provides, "medical expenses that are covered by two different Plans" must be filed with both plans." *See* (Summary Plan Description ("SPD"), Coordination of Benefits; p. 97; Amendment #17).

15. Specifically, effective April 1, 2018, Amendment #17 to the Plan's Summary Plan Description in effect at times relevant to this action states:

> If an Eligible Individual incurs medical expenses that are covered by two different Plans, the Eligible Individual must file the claim with BOTH Plans and provide all requested information to BOTH Plans. The claim departments of the two Plans then will decide which Plan is the Primary Plan and which Plan is the Secondary Plan. If the Other Plan is the Primary Plan and This Plan is the Secondary Plan, you must file your claim with This Plan within one hundred twenty (120) days of the Primary Plan's adjudication of the claim. Such a claim must be made in compliance with the requirements described in the section of This Plan entitled "Claiming Your Benefits.

16. The Plan also provides that with respect to all charges or medical expenses incurred prior to April 1, 2018, claims should be submitted within 90 days of the end of the date the claim was incurred, and that "[e]xcept when the Claimant is legally incapacitated, **no benefits will ever be paid** for medical claims submitted to the Fund Office more than 15 months after the date the claim was incurred." (Summary Plan Description, 2015, p. 114)(emphasis added).

17. The Plan also provides that with respect to charges incurred after April 1, 2018, the deadline for filing such claims is either 120 days after the date of service or the deadline set forth in the applicable provider network agreement. *See* (Summary Plan Description ("SPD"); p. 114; Amendment #17).

18. The Plan Document specifically provides, effective April 1, 2018, that rights, causes of action, and claims which arise under the Plan in connection with the denial of medical

4

claims may not be assigned by participants and beneficiaries to third parties, including providers. *See* (Summary Plan Description ("SPD"); p. 116; Amendment #17).

19. The Plan Document and Summary Plan Description also state, effective April 1, 2018, that a claim appeal for denied claims must be filed by an authorized representative of the Participant or Eligible Individual, and that "no claimant may assign any right to appeal benefit denials or any cause of action which may arise after the denial of benefits to any person or entity, including a provider." *See* (Summary Plan Description ("SPD"); p. 116; Amendment #17).

20. On January 1, 2020, the Plan and BCBS entered into a Transition and Termination Network and Claims Processing Serving Agreement ("Termination Agreement").

21. The Termination Agreement states that although the Plan was "solely responsible for providing funds for all valid Claims paid under the Plan," BCBS agreed to "determine whether a Claim for Eligible Persons is eligible to be paid in accordance with the criteria of the Plan and/or directions of the Fund, and if so, adjudicate the Claim." *See* (Termination Agreement, Section 2.5(l)).

22. Upon information and belief, Fairview Health Services ("Fairview") and BCBS have been parties to a Master Agreement ("Master Agreement") under which Fairview agreed to submit claims for medical expenses to BCBS in electronic claim submission formats for access to provider agreements BCBS entered into with health plans paying claims for covered medical services.

23. Between approximately August 27, 2017 and September 12, 2018, Fairview Health Services provided medical treatment services to Plan beneficiary S.D. and billed charges for the following claims: Claim #1: (Dates of Service 8/27/17-12/31/17:

5

$1,736,339.28), Claim #2: (Dates of Service 1/18/18-5/8/18: $1,524,856.95), and Claim #3: (Dates of Service 8/12/18-9/12/18: $377,582.00)("the Claims").

24. The Master Agreement in effect on the dates the Claims were incurred and through May 6, 2020 states that "[i]n no event may Provider submit claims later than 15 months from the date of service."

25. Fairview originally submitted the Claims to HealthPartners, a different medical plan, near in time to the date the Claims were incurred and HealthPartners paid the Claims.

26. Upon information and belief, Fairview Health Services did not submit the Claims to BCBS for reimbursement or payment under the Master Agreement within fifteen (15) months of the dates of service.

27. Upon information and belief, Fairview Health Services did not submit the Claims to the Plan for reimbursement or payment within 120 days or fifteen (15) months of the dates of service as required under the Plan Document.

28. Upon information and belief, at the time Fairview submitted the Claims to HealthPartners in 2018, Fairview was aware, or should have been aware, that the eligible Plan beneficiary was also covered or eligible for coverage under the Plan and that benefits should be coordinated between the Plan and HealthPartners.

29. Upon information and belief, HealthPartners later recouped payments from Fairview that it had made for the Claims.

30. Upon information and belief, after HealthPartners recouped the payments from Fairview, and between approximately April 10, 2020 and April 28, 2020, Fairview then submitted the Claims to BCBS for payment for the first time from the Plan. The Claims were submitted via email by Fairview to BCBS or manually via paper.

31. Upon information and belief, the Master Agreement between BCBS and Fairview provides that Fairview may not submit claims for payment to BCBS later than fifteen (15) months from the date the claims were incurred and that BCBS may reject claims which are untimely submitted under provider agreements.

32. Upon information and belief, BCBS did not reject Fairview's claims as untimely pursuant to the Master Agreement, but instead forwarded the Claims to the Plan for adjudication.

33. At the time BCBS processed the claims and forwarded them to the Plan, BCBS knew, or should have known, that the Claims untimely submitted under the Master Agreement were also untimely under the terms of the Plan Document and had not been submitted to the Plan as required by the Plan's coordination of benefit provisions.

34. Although Fairview Health Services had breached the terms of the Master Agreement by providing untimely claims to BCBS under both the Plan Document and the Master Agreement, BCBS allowed Fairview Health Services to submit the Claims to BCBS for review and adjudication.

35. Upon information and belief, although BCBS had a contractual obligation to adjudicate claims in accordance with the Plan document, it informed Fairview Health Services that it was requesting that the Plan to waive the Plan's timely filing deadlines set forth in the Summary Plan Description and governing Plan documents.

36. On September 11, 2020, Fairview issued a Notice of Invocation of Arbitration to BCBS, asserting that BCBS was responsible for payment of the Claims.

37. On or about September 18, 2020, BCBS forwarded the Notice of Invocation of Arbitration to the Plan and requested the Plan defend and indemnify BCBS in relation to Fairview's request for payment on the Claims.

38. On September 24, 2020, the Plan responded to Fairview and BCBS's inquiries regarding the Claims and stated, among other allegations, that (i) the Plan has no duty to defend and indemnify BCBS from claims Fairview is asserting against BCBS under the Master Agreement between BCBS and Fairview; (ii) the Plan is a self-insured plan governed by ERISA and Fairview's request for arbitration is preempted by the remedial scheme set forth in ERISA §502; (iii) the Plan includes an enforceable and unambiguous anti-assignment clause, which specifically states that "any attempt to assign rights or benefits to a third party is null and void absent written consent by the Plan"; and (iv) that the claims were untimely under the Plan Document.

39. On September 24, 2020, the Plan also informed BCBS that it did not have sufficient information regarding the processing of the Claims, in part because it no longer had access to BCBS's claims processing system, to ascertain whether BCBS might have some culpability or fault in the untimely processing of such Claims, therefore it was not able to ascertain whether it had a duty to defend or indemnify BCBS under the Termination Agreement.

40. On September 24, 2020, the Plan also informed BCBS that to the extent the dispute between BCBS and Fairview arises out of the Master Agreement between BCBS and Fairview, the Plan is not a party to that agreement and has no obligation to defend or indemnify BCBS for an alleged breach of the Master Agreement.

4811-2447-0516.5

41. On, or about March 2, 2021, Fairview threatened to sue the Plan in relation to its denial of the Claims.

42. After the Plan notified both Fairview and BCBS that the Claims were untimely under the Plan Document, and that the Plan had no legal obligation to arbitrate a dispute between Fairview and BCBS, BCBS continued to coordinate and cooperate with Fairview in an attempt to force the Plan into arbitration while knowing any such attempt would be preempted by ERISA and inconsistent with the remedies available to claimants under the Plan.

43. On or about April 13, 2021, BCBS received information relating to the Claims and how the Claims were untimely submitted to BCBS by Fairview, but did not forward that information to the Plan as requested or required by the Termination Agreement.

44. On or about April 30, 2021, BCBS exchanged correspondence with Fairview in which the parties discussed an attempt to require the Plan to be subject to BCBS's arbitration provision in the Master Agreement although BCBS was fully aware any such attempt would be preempted by ERISA and inconsistent with the remedies available to claimants under the Plan.

45. On or about April 30, 2021, BCBS exchanged correspondence with Fairview, without copying the Plan's counsel, in which they conspired to provide the Plan with a redacted or incomplete version of the Master Agreement.

46. On or about May 5, 2021, BCBS notified Fairview that the Plan was required to adhere to "Blue Cross's arrangements with network providers," outlined each provision of the Termination Agreement BCBS had allegedly told the Plan supported payment of the Claims at issue, and outlined legal arguments for Fairview to assert against the Plan in violation of the Termination Agreement.

47. On or about May 5, 20201, BCBS notified Fairview that the Plan should be paying the Claims under a vaguely referenced Provider Manual available to the public on the internet, although BCBS was fully aware it had a contractual obligation to process claims in accordance with the Plan Document.

48. On or about May 5, 2021, BCBS informed Fairview that it would work with Fairview on "next steps" against the Plan while also seeking defense and indemnity from the Plan.

49. Subsequent to seeking defense and indemnity from the Plan, BCBS coordinated and cooperated with Fairview an in attempt to pull the Plan into litigation regarding BCBS's Master Agreement with Fairview.

50. Upon information and belief, subsequent to September 2020 BCBS received relevant information regarding the Claims from Fairview, which the Plan had requested under the Termination Agreement, but did not produce the same to the Plan while also requesting defense and indemnification.

51. BCBS has requested that the Plan take responsibility for any liability it may incur in relation to the Claims submitted by Fairview.

52. The Plan is not a party to any arbitration agreement with Fairview.

### COUNT I – Declaratory Judgment

53. Plaintiffs restate the facts and allegations set forth in paragraphs 1-51.

54. Pursuant to 28 U.S.C. §2201, this court may declare the rights and legal relations of any interested party where there is a controversy.

55. The controversy at issue is that Fairview is seeking payment and threatening legal action against the Plan in relation to certain claims that were a provider liability under

the Master Agreement due to untimely filing and which the Plan denied for timely filing, and also seeking to force the Plan to arbitrate claims under the terms of Fairview's Master Agreement with BCBS although the Plan is not a party to that contract.

56. The Plan is entitled to a declaration that that any claims asserted by Fairview against the Plan and it's agent(s), including BCBS, which arise out of the denial of the Claims by the Plan, or pursuant to the Plan Document, are preempted by ERISA and that the Plan is not required to arbitrate the dispute with Fairview.

57. The Plan is entitled to a declaration enforcing the terms of the Plan Document by declaring that the Claims were not timely submitted under the Plan Document and are, therefore, a provider liability.

58. The Plan is entitled to a declaration enforcing the terms of the Plan Document that Fairview lacks standing to assert claims against the Plan and it's agent(s), including BCBS, in relation to the denial of such Claims, and enforcing the deadlines for claim submission set forth in the Plan Document and other appeal provisions relating to claims incurred for Plan participants.

59. The Plan is entitled to a declaration enforcing the terms of the Plan Document by declaring that the Plan and it's agent(s), including BCBS, are not responsible for paying the Claims under the Plan Document.

## **COUNT II – ERISA §502(a)(3)**

60. Plaintiffs restate the facts and allegations set forth in paragraphs 1-59.

61. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiff Trustees may bring a civil action to enjoin any act or practice which violates the terms of the Plan Document

11

and may also seek equitable relief. Plaintiffs may further obtain other equitable relief to redress such violations of ERISA or the Plan Document.

62. The terms of the Plan Document state that claims for benefits are not payable if submitted to the Plan more than either 120 days or 15 months after the date the claim was incurred or relevant dates of services for the medical treatment.

63. The Claims at issue for which Fairview is seeking payment from the Plan and its agent(s) were submitted to the Plan after expiration of the 120 day and 15 month timely filing deadlines.

64. The terms of the Plan Document also provide that when a provider is aware the eligible individual is covered by more than one health plan the claims must be submitted to both Plans for coordination of benefits within 120 days of the dates of service.

65. The Claims at issue for which Fairview is seeking payment from the Plan and its agent(s) were not submitted to the Plan for coordination of benefits within 120 days of the dates of service although Fairview was aware the covered individual had coverage under the Plan.

66. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the Plan seeks an order of equitable relief enjoining Defendant Fairview from seeking payment from the Plan for expenses incurred for the Claims because they are not payable nor covered under the Plan.

67. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the Plan seeks an order of equitable relief enjoining Fairview from seeking to arbitrate any dispute with the Plan over the Claims and enjoining Defendant from seeking to compel arbitration

with BCBS of the denial of any claims denied by the Plan or it's agent(s) in accordance with the Plan Document.

68. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the Plan seeks an order of equitable relief enjoining Fairview.

69. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the Plan is entitled to a declaration enforcing the terms of the Plan Document by declaring that any claims asserted by Fairview against the Plan and it's agent(s), including BCBS, are preempted by ERISA and that the Claims were not timely submitted under the Plan Document.

70. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the Plan is entitled to a declaration enforcing the terms of the Plan Document by declaring that Fairview lacks standing to assert claims against the Plan and it's agent(s), including BCBS, in relation to the denial of such Claims, and enforcing the deadlines for claim submission set forth in the Plan Document and other appeal provisions relating to claims incurred for Plan participants.

71. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the Plan is entitled to a declaration enforcing the terms of the Plan Document by declaring that the Plan, its participants, and it's agent(s), including BCBS, are not responsible for paying the Claims under the Plan Document.

## COUNT III – BREACH OF TERMINATION AGREEMENT

72. Plaintiffs restate the facts and allegations set forth in paragraphs 1-57.

73. BCBS and the Plan are parties to the Termination Agreement.

74. The Termination Agreement provides that BCBS will process claims in accordance with the Plan Document, will determine whether claims are to be paid in

accordance with the criteria of the Plan and/or directions of the Plan, and "shall follow the specific terms of the Plan Document."

75. The Termination Agreement also provides that any party seeking defense and indemnification has an obligation to cooperate fully with the other Party in the defense of such matters.

76. The Termination Agreement also provides that defense and indemnity is not required when claims, demands, litigation and legal fees resulted directly from a breach of the Termination Agreement by BCBS and its agents. Specifically, Section 4.4. of the Termination Agreement states that BCBS is not entitled to indemnity under §4.4 of the Plan's agreement with BCBS if "such third party claims, demands, actions, litigation, decrees, judgments, losses, damages, liabilities, fines, penalties, awards, expenses and/or associated costs and legal fees result directly from the breach of Blue Cross its agents or subcontractors of any obligations of Blue Cross under this Agreement."

77. BCBS breached the Termination Agreement by failing to reject the Claims which were untimely submitted by Fairview under both the Plan Document and the Master Agreement.

78. BCBS breached the Termination Agreement by cooperating with Fairview in waiving the Master Agreement timely filing requirement an attempt to build a lawsuit and claim against the Plan and to force the Plan into arbitration of this dispute in contravention of its obligation to cooperate in the defense of the claims being asserted against BCBS and the Plan in relation to the denial of untimely filed Claims.

79. BCBS breached the Termination Agreement by suggesting to Fairview that the Plan could waive the timely filing deadlines set forth in the Plan Document.

14

80. BCBS is liable for any and all damages incurred by the Plan which arise out of these breaches.

81. The Plan seeks a declaratory judgment, pursuant to 28 U.S.C. 2201, that it has no duty to defend and indemnify BCBS in relation to the denial of the Claims at issue in this lawsuit.

82. The Plan seeks a declaratory judgment, pursuant to 28 U.S.C. 2201, that it has no duty to defend and indemnify BCBS in relation to any purported breach by it of its Master Agreement with Fairview.

83. BCBS's breach of the Termination Agreement, or multiple breaches, are material breaches of the Termination Agreement.

84. Pursuant to the Termination Agreement, BCBS is liable for all of the Plan's costs, expenses, attorney's fee and disbursements which arise out of the prosecution of this particular claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter the following judgment against Fairview Health Services and BCBSM, Inc. d/b/a Blue Cross Blue Shield of Minnesota:

1. A declaration enforcing the terms of the Plan Document by declaring that any claims asserted by Fairview against the Plan and it's agent(s), including BCBS, are preempted by ERISA;

2. An order for equitable relief enjoining Defendant Fairview from seeking payment from the Plan or its participants and beneficiaries for expenses incurred for the Claims;

3.	An order for equitable relief enjoining Defendant Fairview from seeking to arbitrate any dispute over the Claims and enjoining Defendant from seeking to compel arbitration with BCBS of the denial of any claims denied by the Plan or it's agent(s) in accordance with the Plan Document;

4.	A declaration enforcing the terms of the Plan Document by declaring that any claims asserted by Fairview against the Plan and it's agent(s), including BCBS, are preempted by ERISA and that the Claims were not timely submitted under the Plan Document;

5.	A declaration enforcing the terms of the Plan Document by declaring that Fairview lacks standing to assert claims against the Plan and it's agent(s), including BCBS, in relation to the denial of such Claims, and enforcing the deadlines for claim submission set forth in the Plan Document and other appeal provisions relating to claims incurred for Plan participants;

6.	A declaration enforcing the terms of the Plan Document by declaring that the Plan, its participant and beneficiaries, and it's agent(s), including BCBS, are not responsible for paying the Claims under the Plan Document;

7.	An order finding that BCBS has breached the terms of the Termination Agreement and a declaration that the Plan has no duty to defend or indemnify BCBS in relation to the denial of the Claims at issue in this lawsuit.

8.	An order finding that BCBS has breached the terms of the Termination Agreement and a declaration that the Plan it has no duty to defend nor indemnify BCBS in relation to any purported breach of its Master Agreement with Fairview.

9.	Enter any further orders which are reasonable and just to effectuate the terms of the Plan Document and the equitable remedies requested herein;

4811-2447-0516.5

10. Grant such other relief as the Court deems just and proper;

11. Award Plaintiffs and the Plan costs and reasonable attorney's fees in accordance with 29 U.S.C. §1132(g) and ERISA §502(g)(1).

Respectfully submitted,

Date: August 5, 2021.  **KUTAK ROCK LLP**

By: *s/ Amanda R. Cefalu*
Amanda R. Cefalu (#309436)
Nathan T. Boone (#0398989)
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402
PH: 612-334-5000
FX: 612-334-5050
amanda.cefalu@kutakrock.com
nathan.boone@kutakrock.com

*Attorneys for Plaintiffs*