# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DAVID MANDERSON and DAVID FRARY,
as Trustees of the I.B.E.W. 292 Health
Care Plan,

Civil No. 21-1797 (JRT/TNL)

Plaintiffs,

v.

FAIRVIEW HEALTH SERVICES and BCBSM,
INC. d/b/a Blue Cross and Blue Shield of
Minnesota,

Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTIONS TO DISMISS**

Amanda R. Cefalu and Ruth S. Marcott, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for plaintiffs.

D. Scott Erickson and Timothy J. Henkel, **D.S. ERICKSON & ASSOCIATES, PLLC**, 7650 Edinborough Way, Suite 500, Edina, MN 55435, for Defendant Fairview Health Services.

Gurdip Atwal, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415, for Defendant BCBSM, Inc.

In 2017 and 2018, Defendant Fairview Health Services ("Fairview") provided medical treatment to a beneficiary of a medical benefits plan established by the I.B.E.W. 292 Health Care Plan (the "Plan") that contracted with Defendant BCBSM, Inc. to gain access to a network of medical providers including Fairview that BCBSM created. Fairview filed claims seeking payment for the services provided, but those claims were denied.

Plaintiffs David Manderson and David Frary in their roles as trustees of the Plan brought this action seeking various forms of relief from the Court.  Against Fairview, the Plan seeks (1) a declaratory judgment that any claims Fairview asserts against the Plan and its agents in connection with these services are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and thus may only be pursued as provided for by ERISA; (2) a declaratory judgment enforcing the terms of the Plan's medical benefit plan documents; and (3) an order enjoining Fairview from seeking payment for these services.  Against BCBSM, the Plan brings a breach of contract claim seeking (1) damages; (2) a declaratory judgment that it has no duty to defend or indemnify BCBSM in connection with the medical claims at issue; and (3) a declaratory judgment that it has no duty to defend or indemnify BCBSM in relation to any alleged breach by BCBSM of its agreements with Fairview.

Both Defendants filed motions to dismiss the claims against them.  Fairview brings its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) asserting the Court lacks subject matter jurisdiction because (1) any attempt to recover for the services provided are state law causes of action that are not preempted by ERISA depriving the Court of 28 U.S.C. § 1331 federal question jurisdiction[1] and (2) the Plan's Complaint does not present a justiciable case or controversy.  BCBSM brings its Motion to Dismiss under

---

[1] It is undisputed that the Court does not have diversity jurisdiction under 28 U.S.C. § 1332.

Federal Rule of Civil Procedure 12(b)(1) asserting the Court lacks supplemental jurisdiction over the claims against it and under Federal Rule of Civil Procedure 12(b)(6) asserting the Plan's Complaint fails to state a claim for which relief can be granted.

The Court will deny Fairview's Motion to Dismiss because it has federal question jurisdiction through ERISA.  The Court will also deny BCBSM's Motion to Dismiss because the face of the Complaint (1) sufficiently alleges that Count III derives from a common nucleus of operative fact over the other claims for which the Court has original jurisdiction and (2) adequately alleges a plausible cause of action.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The Plan is a multiemployer benefits plan established under the Taft-Hartley Act that provides medical benefits to its participants and their dependents and beneficiaries. (Compl. ¶¶ 1, 4, Aug. 5, 2021, Docket No. 1.)  It is subject to ERISA, 29 U.S.C. § 1000 *et seq*.  (*Id.* ¶ 1.)  The Plan provides benefits in accordance with the terms and conditions contained in various governing documents including a Trust Agreement and Plan Document and Summary Plan Description (collectively, "Plan Documents").  (*Id.* ¶ 4.) Fairview is a nonprofit corporation that provides medical and other health-related services.  (*Id.* ¶ 5.)  BCBSM is a nonprofit health service plan corporation.  (*Id.* ¶ 6.)

The Plan alleges that it and BCBSM entered into several agreements.  First, from January 1, 2017 through December 31, 2019, the Plan and BCBSM were parties to a series

of agreements called Claims Processing Services Agreements ("Servicing Agreements").
(*Id.* ¶ 11.)  Under these Servicing Agreements, BCBSM provided the Plan's participants
and beneficiaries access to a network of health care providers created by BCBSM.  (*Id.*
¶ 12.)  BCBSM also agreed to handle various claims processing and adjudication services
for the Plan for claims submitted by medical providers seeking payment from the Plan.
(*Id.* ¶¶ 11.)  The Servicing Agreements allegedly required BCBSM to follow the terms of
the Plan Documents and direct questions to the Plan's administrators.  (*Id.* ¶ 13.)

On January 1, 2020, the Plan and BCBSM entered into a Transition and Termination
Network and Claims Processing Servicing Agreement ("Termination Agreement").  (*Id.*
¶ 20.)  Under Section 2.5(l) of the Termination Agreement, according to the Complaint,
the Plan agreed to pay all valid claims and BCBSM agreed to determine claim eligibility in
accordance with the Plan Documents or at the direction of the Plan and then adjudicate
the claims.  (*Id.* ¶ 21.)  Section 4.4 of the Termination Agreement requires the Plan to:

> indemnify, defend and hold [BCBSM] forever harmless, from
> and against any and all claims, demands, actions, litigation,
> judgments, liabilities, fines, penalties, awards, expenses
> and/or associated costs and legal fees which are made or
> incurred by any third party or parties and which arise or result
> from any dispute regarding coverage, denial of benefits,
> claims payments, claims administration or claims adjudication
> in connection with [the Plan] or its Eligible Persons use of the
> Network pursuant to this Agreement and in accordance with
> current law or otherwise, except to the extent such third party
> claims, demands, actions, litigation, decrees, judgments,
> losses, damages, liabilities, fines, penalties, awards, expenses
> and/or associated costs and legal fees result directly from the

> breach of [BCBSM] its agents or subcontractors of any
> obligations of [BCBSM] under this Agreement.

(Decl. of Gerardo Alcazar, Sealed Ex. A, Sept. 7, 2021, Docket No. 15; *see also* Compl. ¶ 76.)

The Plan Documents established deadlines by which claims for medical benefits must be submitted for them to be paid by the Plan. (Compl. ¶¶ 16–17.) The Plan Documents stated that claims for expenses incurred before April 1, 2018 should be submitted within 90 days of the date the claim was incurred and that claims would never be paid if submitted more than 15 months after the claim was incurred unless the claimant was legally incapacitated. (*Id.* ¶ 16.) For expenses incurred after April 1, 2018, claims had to be submitted either within 120 days or by the deadline established in a provider network agreement. (*Id.* ¶ 17.)

The Plan Documents also established various procedures for the coordination of benefits if expenses might be covered by two different insurance plans. (*Id.* ¶¶ 14–15.) Effective April 1, 2018, the Plan Documents required that expenses be filed with both plans and the two plans would work together to decide which plan was the primary plan responsible for payment and to coordinate payment. (*Id.* ¶ 15.) If the other insurance plan had primary responsibility, claims had to be filed with the Plan within 120 days after the other, primary plan adjudicated the claim in the first instance. (*Id.*)

Fairview and BCBSM entered into a separate "Master Agreement" adding Fairview to BCBSM's network of providers that BCBSM provided health benefit plans access to. (*Id.* ¶ 22.) This Master Agreement allowed Fairview to submit claims to BCBSM for payment

by benefit plans such as the Plan.  (*Id.*)  According to the Complaint, this Master Agreement also established deadlines for submission of claims including that providers could not submit claims more than 15 months after the date of service.  (*Id.* ¶ 24.)

The Plan has not entered into any arbitration agreement with Fairview.  (*Id.* ¶ 52.)

From August 2017 to September 2018, Fairview provided services to a beneficiary of the Plan totaling $3,638,778.23.  (*Id.* ¶ 23.)  The services generated three separate claims incurred (1) August 27 to December 31, 2017; (2) January 18 to May 8, 2018; and (3) August 12 to September 12, 2018 (collectively the "Claims").  (*Id.*)

Fairview submitted these Claims to another medical benefits plan—HealthPartners—soon after incurring the expenses.  (*Id.* ¶ 25.)  HealthPartners paid Fairview for the Claims but later recouped the payments from Fairview.  (*Id.* ¶¶ 25, 29.)

The Plan alleges that, at the time Fairview submitted the claims to HealthPartners, Fairview was aware or should have been aware that the beneficiary was covered by the Plan and that benefits should have been coordinated between the Plan and HealthPartners.  (*Id.* ¶ 28.)  Despite this, according to the Complaint, Fairview first submitted the claims to BCBSM in April 2020, more than 15 months after the expenses were incurred.  (*Id.* ¶ 30.)  The Plan alleges the Claims (1) were untimely under the Plan Documents, (2) were untimely under the Master Agreement, and (3) were not properly submitted for coordination of benefits.  (*Id.* ¶ 33.)

The Plan further alleges that BCBSM knew or should have known of these problems with the Claims when it received them from Fairview. (*Id.*) Despite this, when BCBSM received the Claims, it did not reject them but instead allowed Fairview to submit them and then sent them to the Plan for adjudication. (*Id.* ¶¶ 32, 34.) According to the Complaint, BCBSM had a contractual obligation to adjudicate the claims in accordance with the Plan Documents but instead informed Fairview that it was requesting the Plan waive the timely filing deadlines. (*Id.* ¶ 35.)

On September 11, 2020, Fairview sent BCBSM a Notice of Arbitration, seeking to hold BCBSM responsible for the Claims. (*Id.* ¶ 36.) On September 18, 2020, BCBSM forwarded the Notice to the Plan, asking the Plan to defend and indemnify BCBSM in connection with the Claims. (*Id.* ¶ 37.) BCBSM requested that the Plan assume responsibility for any liability connected with Fairview's Claims. (*Id.* ¶ 51.)

On September 24, 2020, the Plan responded to Fairview and BCBSM asserting (1) the Plan has no duty to defend and indemnify BCBSM for any claims arising under the BCBSM-Fairview Master Agreement; (2) the Plan is governed by ERISA and thus any arbitration against the Plan is preempted by ERISA; (3) the Plan Documents do not permit assignment of any claims without consent by the Plan; and (4) the Claims were untimely. (*Id.* ¶ 38.) The Plan also responded to BCBSM asserting that (1) it lacked sufficient information to determine whether BCBSM might be at fault and therefore could not determine whether the Plan might have a duty to defend and indemnify BCBSM and (2)

it is not a party to the Master Agreement and therefore has no duty to defend and indemnify BCBSM for any breach of it.  (*Id.* ¶¶ 39–40.)

The Plan alleges that after these responses, Fairview and BCBSM coordinated and cooperated in an attempt to force the Plan into arbitration despite knowing ERISA preempted the arbitration and to force the Plan into litigation regarding the Master Agreement.  (*Id.* ¶¶ 42, 44.)  This allegedly included (1) Fairview and BCBSM conspiring to send the Plan a redacted or incomplete version of the Master Agreement; (2) BCBSM outlining legal arguments for Fairview to make against the Plan; (3) BCBSM outlining provisions of the Termination Agreement which might support payment; (4) BCBSM informing Fairview that the Plan should pay the Claims under a "Provider Manual;" and (5) BCBSM informing Fairview that it would work with Fairview on "next steps" against the Plan.  (*Id.* ¶¶ 45–49.)  The Complaint alleges BCBSM received information relevant to the Claims from Fairview which the Plan requested under the Termination Agreement, but BCBSM failed to forward this information to the Plan.  (*Id.* ¶ 50.)  BCBSM allegedly took these actions while simultaneously seeking defense and indemnification from the Plan, in violation of the Termination Agreement.  (*Id.* ¶¶ 46, 48.)

Meanwhile, on March 2, 2021, Fairview threatened to sue the Plan for the denial of the Claims.  (*Id.* ¶ 41.)

-8-

II.     **PROCEDURAL HISTORY**

On August 5, 2021, the Plan brought this action against Fairview and BCBSM. Against Fairview, the Plan brings claims under ERISA § 502(a)(3) and under 28 U.S.C. § 2201 seeking a declaratory judgment and order (1) that any claims Fairview asserts against the Plan and its agents (including BCBSM) are preempted by ERISA; (2) that the Plan is not required to arbitrate a dispute with Fairview; (3) enforcing the Plan Documents and declaring the Claims were not timely submitted and are Fairview's liability; (4) that the Plan and its agents (including BCBSM) are not responsible for paying the Claims; and (5) enjoining Fairview from seeking payment for the Claims or seeking to compel arbitration, among other requests for relief.  (*Id.* ¶¶ 56–59, 66–71; *see also id.* at 15–17.) Against BCBSM, the Plan brings a breach of contract claim alleging that BCBSM materially breached the terms of the Termination Agreement such that BCBSM is liable for any damages the Plan incurs as a result of the breaches and seeking a declaratory judgment that the Plan has no duty to defend or indemnify BCBSM in connection with the Claims or any alleged breach of the Master Agreement with Fairview.  (*Id.* ¶¶ 77–84; *see also id.* at 16–17.)

On September 7, 2021, BCBSM moved to dismiss the count against it under Rule 12(b)(1) and 12(b)(6) claiming (1) the Court lacks subject matter jurisdiction over the count asserted against BCBSM and (2) the Complaint fails to state a claim upon which relief can be granted against BCBSM.  (BCBSM's Mot. Dismiss, Sept. 7, 2021, Docket No.

10.)  On September 17, 2021, Fairview moved to dismiss both counts against it under Rule

12(b)(1) claiming the Court lacks subject matter jurisdiction over the claims against it.

(Fairview's Mot. Dismiss, Sept. 17, 2021, Docket No. 23.)  The Plan opposes both motions.

(Pl.'s Mem. Opp. BCBSM's Mot. Dismiss, Sept. 28, 2021, Docket No. 33; Pl.'s Mem. Opp.

Fairview's Mot. Dismiss, Oct. 8, 2021, Docket No. 34.)

In addition to this case, BCBSM filed its own action in Minnesota state court against

the Plan seeking a declaratory judgment that the Plan must defend and indemnify BCBSM

with respect to any claims asserted by Fairview in accordance with their Agreements and

seeking monetary damages BCBSM incurred as a result of the Plan's alleged breach of

contract.  (*BCBSM, Inc. v. I.B.E.W. 292 Health Care Plan*, Case No. 21-1885, Notice of

Removal, Aug. 20, 2021, Docket No. 1.)  The Plan removed the case to federal court, but

the Court remanded the case to state court under 28 U.S.C. § 1447(c) because the Court

lacked subject matter jurisdiction.  *BCBSM, Inc. v. I.B.E.W. 292 Health Care Plan*, No. 21-

1885, 2022 WL 867232 (D. Minn. Mar. 23, 2022).

## DISCUSSION

### I.   SUBJECT MATTER JURISDICTION

#### A.   Standard of Review

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction and

requires the Court to examine whether it has authority to decide the claims.  The party

seeking to invoke a federal court's subject matter jurisdiction bears the burden of

-10-

showing, by a preponderance of the evidence, that the court has jurisdiction. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). A court must dismiss an action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted). The Court, therefore, may also consider "materials that are necessarily embraced by the pleadings." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).[2] The Court also accepts as true all facts alleged in the complaint construing all reasonable inferences in the Plaintiff's favor. *Id.* "The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Osborn*, 918 F.2d at 729 n.6 (citations and internal quotation marks omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (citations omitted).

---

[2] "[M]aterials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted)).

**B.      Analysis of Fairview's Motion**

Fairview brings a facial attack on subject matter jurisdiction as it does not present any evidence or cite anything other than documents such as the Servicing, Termination, and Master Agreements embraced in the Plan's Complaint.   Fairview challenges the Court's subject matter jurisdiction on two grounds: (1) any claims Fairview has are state law breach of contract claims that are not preempted by ERISA and (2) the Plan's declaratory judgment claim does not present a justiciable case or controversy.

**1.      ERISA Preemption**

ERISA § 502(e)[3] provides federal district courts with original jurisdiction over ERISA claims.   ERISA is a federal statute that completely preempts many state law causes of action because Congress intended that regulation of ERISA plans would be "exclusively a federal concern."   *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).   Therefore, ERISA transforms "any state-law cause of action that duplicates, supplements, or supplants" ERISA remedies into ERISA claims over which federal courts have federal question subject matter jurisdiction. *Id.* at 209.   This is especially so for claims under ERISA § 502(a).   *Id.*

ERISA § 502(a)(3) allows an ERISA plan "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of

_____

[3] ERISA § 502 is codified at 29 U.S.C. § 1132.

the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  An ERISA fiduciary is anyone who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

Fairview asserts that ERISA's remedial scheme is irrelevant and cannot be a source of jurisdiction because (1) Fairview's dispute for payment is based on a separate contract dispute under the Master Agreement, not the Plan Documents and (2) the Plan's possible duty to arbitrate arises through the operation of the Master Agreement and the Termination Agreement, not the Plan Documents.  According to Fairview, these are solely state contract law issues and thus, properly understood, the Plan's Complaint does not raise ERISA claims under ERISA § 502(a)(3).

Fairview is correct that ERISA does not preempt state law claims arising from another independent legal duty or if no one could have brought the claims at some point in time under ERISA § 502.  *See Davila*, 542 U.S. at 210.  And the mere fact that a claim affects an ERISA plan or resolving the claim may require referencing the terms of an ERISA plan does not necessarily convert the claim into an ERISA claim.  *See Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 648 F.3d 935, 939–40 (8th Cir. 2011).

-13-

The face of the Plan's Complaint, however, alleges that the medical claims were incurred under the terms of the Plan Documents; the Plan denied Fairview's claims under the terms of the Plan Documents; Fairview seeks payment for benefits provided for by the Plan Documents; and the Plan seeks to enforce the terms of the Plan Documents, including terms related to the timeliness of claims.  These are not independent of the ERISA plan.  The Complaint also alleges the Plaintiffs are fiduciaries who can bring this claim under ERISA § 502(a)(3).

Therefore, the face of the Complaint properly alleges the Court has original question subject matter jurisdiction arising from ERISA § 502(a)(3).  Fairview's argument may have validity as the facts of the case develop including the exact nature of Fairview's potential claim if it becomes clear that the Plan had an independent legal duty or that no one could have brought an ERISA claim at any point.  If so, Fairview may bring a factual attack on the Court's jurisdiction at that time.  *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("Objections to a tribunal's [subject matter] jurisdiction can be raised at any time[.]").

### 2.    Declaratory Judgment and Justiciable Controversy

Fairview also seeks dismissal arguing that this action does not present an actual controversy over which the Court can issue a declaratory judgment.  Fairview argues this is so because its claims and the arbitration are rooted in agreements other than the Plan Documents and so any order based on ERISA would not affect the parties' rights and

-14-

obligations under these independent contracts.  Fairview asserts that to the extent the Plan seeks to enforce the terms of the Plan Documents, it can do so by simply denying payment.  Thus, Fairview argues the Court does not have jurisdiction to exercise the powers conferred by the Declaratory Judgment Act.

The Declaratory Judgement Act authorizes courts to declare the legal relations of parties "[i]n a case of actual controversy within its jurisdiction."  28 U.S.C. § 2201.  The Act is procedural and does not confer jurisdiction.  *Dakota, Minnesota & E. R.R. Corp. v. Schieffer*, 711 F.3d 878, 881 (8th Cir. 2013).  Therefore, the Plan must establish an independent basis for jurisdiction.  *See id.*  As discussed above, the face of the Plan's Complaint adequately alleges the Court's subject matter jurisdiction under ERISA § 502(a)(3).

To seek a declaratory judgment, there must also be "a case of actual controversy."  28 U.S.C. § 2201.  "The phrase 'case of actual controversy' in § 2201 'refers to the type of "Cases" and "Controversies" that are justiciable under Article III.'"  *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)).  Courts require an "actual controversy" to "be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

-15-

*MedImmune*, 549 U.S. at 127 (quotation omitted).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The Complaint alleges that there is a definite and concrete dispute between the parties.  The Complaint alleges Fairview has threatened to sue the Plan in relation to the denial of the Claims amounting to more than $3.6 million and that Fairview continues to seek recovery on these claims.  It further alleges that Fairview seeks to force the Plan and its agents including BCBSM to arbitrate this dispute even though the Plan claims it cannot be forced to do so.

Allowing the Plan to seek a declaratory judgment would be in keeping with the purpose of this remedy by settling an actual controversy before the Plan is exposed to potential liability for an action a declaratory judgment could avoid.  *See Maytag*, 687 F.3d at 1081; *MedImmune*, 549 U.S. at 128–29 ("[W]e do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat[.]").  If the Plan refuses to engage in the arbitration because it believes the arbitration is unenforceable and preempted by ERISA, but it is ultimately found to be enforceable, the Plan may be liable for the results of a process it did not participate in.  If the Plan participates but after the fact the arbitration is preempted or declared unenforceable, the Plan will have spent

resources participating in an arbitration that had no effect on its rights or obligations.[4]
The Complaint alleges that this dispute is real, and a declaratory judgment may be able
to immediately resolve at least some of the parties' rights and duties. *See Maytag*, 6687
F.3d at 1082. It is immaterial that the Plan seeks to avoid obligations rather than Fairview
trying to impose them on the Plan. *See Md. Cas. Co.*, 312 U.S. at 273 ("It is immaterial
that frequently, in the declaratory judgment suit, the positions of the parties in the
conventional suit are reversed; the inquiry is the same in either case.")

Fairview also contends in its reply brief that a declaratory judgment is
inappropriate because the Plan is seeking to enforce the terms of the Plan Documents
which the Plan can and has done so by denying the Claims. The cases Fairview cites in
support of this argument show why this argument is unavailing. First, multiple cases
found that while the declaratory judgment sought may be unavailable to a plaintiff under
ERISA, it is available under the Declaratory Judgment Act. *See Prudential Ins. Co. of Am.
v. Doe*, 76 F.3d 206, 210 (8th Cir. 1996); *Connecticut Gen. Life Ins. Co. of New York v. Cole*,
821 F. Supp. 193, 197 (S.D.N.Y. 1993); *Reynolds v. Stahr*, 758 F. Supp. 1276, 1280–81 (W.D.
Wis. 1991). Second, this case is inapposite to some of those Fairview cites. For example,
in *Gulf Life Insurance Co. v. Arnold*, when a beneficiary sought benefits under an ERISA
plan, the plaintiff-fiduciary never denied payment, instead it just filed a lawsuit as the

---

[4] Resolution of these issues before an arbitration may, therefore, be beneficial to Fairview
as well because if the arbitration is unenforceable, it will have wasted its own resources and its
positions in the arbitration may depend on whether the Plan is obligated to participate.

means of enforcing the ERISA plan.  809 F.2d 1520, 1522 (11th Cir. 1987).  The Eleventh

Circuit found that this was improper as the plan could enforce the terms of the plan by

denying payment.  *Id.* at 1523–24.  Here, the Plan already denied the claims and the

Complaint alleges that Fairview seeks to evade enforcement of the denial.  The Plan

cannot on its own compel Fairview to not file its own lawsuit or to not proceed to

arbitration.  Unlike in *Gulf Life Insurance*, the Complaint alleges the Plan seeks an order

enforcing the denial under the terms of the ERISA plan, not an order granting the initial

denial.  In other words, the Plan does not seek to simply clarify the terms of the ERISA

plan, but rather to enforce an action taken under the terms of the plan.

In sum, the face of the Complaint alleges there is a real dispute over more than

$3.6 million and over each parties' legal rights and obligations.  It is again possible as the

case develops that the assertion of ERISA jurisdiction will become "so completely devoid

of merit as to not involve a federal controversy" and the Court will lack jurisdiction.

*Schieffer*, 711 F.3d at 881 (quotation omitted).  It is also possible there is no "actual

controversy," and the case is not justiciable.  If so, Fairview could bring a factual attack on

the Court's jurisdiction.  For now, however, the Complaint meets the Plan's burden of

establishing jurisdiction, and Fairview's facial attack fails.

C.        Analysis of BCBSM's Subject Matter Jurisdiction Motion

BCBSM also moves to dismiss the Count alleged against it for lack of subject matter jurisdiction.[5]  Because BCBSM provides no evidence in support of its Motion other than the Termination Agreement—which is embraced by the Complaint—the Court will also treat BCBSM's Motion as a facial attack.  It is undisputed that the only possible basis for the Court's jurisdiction over the Count against BCBSM stems from the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

The Court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Even if a claim meets this requirement, a court may in its discretion decline to exercise supplement jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  Other compelling reasons include judicial economy, convenience, fairness, and

_____

[5] In its brief opposing Fairview's Motion, the Plan asserted that Counts I and II in addition to Count III are asserted against BCBSM.  (Pl.'s Mem. Opp. Fairview's Mot. Dismiss at 5 n.1.)  The Complaint makes no indication that this is the case.  The Plan abandoned this position at oral argument, confirming that Counts I and II are only alleged against Fairview.

comity.  *Wong v. Minn. Dep't of Hum. Servs.*, 820 F.3d 922, 931 n.3 (8ᵗʰ Cir. 2016) (citing

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997)).

"Claims within the action are part of the same case or controversy if they 'derive

from a common nucleus of operative fact.'"  *Myers v. Richland Cnty.*, 429 F.3d 740, 746

(8ᵗʰ Cir. 2005) (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 165).  "A plaintiff's claims derive

from a common nucleus of operative fact if the 'claims are such that he would ordinarily

be expected to try them all in one judicial proceeding.'"  *OnePoint Sols., LLC v. Borchert*,

486 F.3d 342, 350 (8ᵗʰ Cir. 2007) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725

(1966).  Courts also look at whether there is a "discernable overlap" between the

operative facts underlying the federal and state claims.  *Hunt v. Up N. Plastics, Inc.*, 980 F.

Supp. 1042, 1044 (D. Minn. 1997).

The parties discuss two cases—*Hunt v. Up North Plastics, Inc.* and *Jahnke v. R.J.*

*Ryan Construction, Inc.*, No. 13-962, 2014 WL 4639831 (D. Minn. Sept. 16, 2014)—to

support their respective positions.  In *Hunt*, the Court concluded that it lacked

supplemental jurisdiction over the state law claims because the federal and state claims

involved different products, different defendants, and different alleged misconduct even

though there were some parallels between the alleged schemes.  *Hunt*, 980 F. Supp. at

1045.  In *Jahnke*, the Court concluded that it had supplemental jurisdiction over a third-

party complaint because, although the relationship between the plaintiffs and the

defendant may have been governed by a different agreement than the relationship

-20-

between the defendant and the third-party defendant, the third-party claims were directly related to payment of the benefits the plaintiffs sought from the defendant. *Jahnke*, 2014 WL 4639831, at *7.

This case falls between *Hunt* and *Jahnke*. This case, however, is ultimately more like *Jahnke* than *Hunt* and has a sufficiently discernible overlap such that it forms a part of the same Article III case or controversy. Like *Jahnke*, all three Counts relate to the payment of the claims Fairview incurred by providing services to a beneficiary of the Plan in relationships governed by different agreements. In *Jahnke*, the underlying controversy was over who—if anyone—was responsible for the benefits due. Here, the underlying controversy is who is responsible for the costs of the services performed: Fairview, BCBSM, or the Plan. Resolving the allegations in the Complaint against both Fairview and BCBSM will require analyzing many overlapping issues including interpretation of the Plan Documents, the Master Agreement, and the Termination Agreement; the legal effects including who is bound by those documents; the timing of submission; and so on.

There may be some issues that do not necessarily overlap such as the exact nature of the duties between BCBSM and the Plan that are not directly connected to Fairview. But that is true in many third-party complaints where a defendant relies on a separate contract to which the plaintiff is not a party to bring a third-party defendant into the case. The fact that the Plan has reversed the conventional positions is immaterial to the analysis. *Cf. Md. Cas. Co.*, 312 U.S. at 273.

One would also expect the Plan to try its claims in the same proceeding because the Plan seeks to avoid payment on the Claims whether directly to Fairview or indirectly through a duty to indemnify BCBSM.  In sum, because the Complaint facially alleges that there is a common nucleus of operative fact between the federal and state claims, the Court may exercise supplemental jurisdiction.

BCBSM and the Plan do not meaningfully dispute whether the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) except agreeing that if the Court grants Fairview's Motion, it should decline to exercise supplemental jurisdiction. The Court will not grant Fairview's Motion.  Therefore, this agreement is moot.  The Court will not sua sponte exercise its discretion to decline supplemental jurisdiction because a review of the § 1367(c) factors do not immediately counsel doing so.   The Court recognizes, however, that there is some tension between Count III and the *BCBSM, Inc. v. I.B.E.W. 292 Health Care Plan* companion case after the Court remanded it to Minnesota state court that may rise to a § 1367(c)(4) compelling reason at some point.

In sum, the Court will deny BCBSM's Motion to Dismiss for lack of subject matter jurisdiction.   It will do so, however, without prejudice and would entertain another motion as this and the companion case develop if either a factual attack on the Court's supplemental jurisdiction is warranted or if the § 1367(c) discretionary considerations warrant declining to exercise supplement jurisdiction.

## II.   BCBSM'S RULE 12(B)(6) MOTION FOR FAILURE TO STATE A CLAIM

### A.   Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor, accepting the complaint's factual allegations as true and drawing all inferences in the plaintiff's favor. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018); *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

**B.    Analysis**

The parties agree—citing Eighth Circuit cases analyzing Minnesota breach-of-contract claims—on the elements of a breach of contract claim under Minnesota law. "Under Minnesota law, a breach-of-contract claim has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Fam. Mut. Ins. Co.*, 899 F.3d 475, 480 (8th Cir. 2018) (quotation omitted).

At this stage, BCBSM does not dispute that the Complaint properly alleged there was a valid contract between the Plan and BCBSM and that the Plan performed any conditions precedent to BCBSM's duty to perform. Instead, BCBSM argues that the Plan failed to state a claim upon which relief can be granted for three reasons: (1) the Complaint fails to allege a breach of contract; (2) even if the Complaint alleges a breach, the breach it alleges does not void the Plan's duties to BCBSM under the contract; and (3) the Complaint fails to allege damages. Drawing all reasonable inferences in the Plan's favor, the Complaint properly alleges a breach of contract claim.

The Complaint adequately alleges that BCBSM breached the Termination Agreement as to BCBSM's alleged duty to adjudicate certain claims in accordance with

the Plan Documents.  Citing Section 2.5(l) of the Termination Agreement, the Complaint alleges that that BCBSM had a duty to adjudicate claims in accordance with the criteria of the Plan Documents and that despite being aware that Fairview submitted its claims in violation of the Plan Documents, BCBSM processed the claims and forwarded them to the Plan instead of adjudicating and denying them as BCBSM was required to.  BCBSM argues this is inadequate because Section 2.5(l) is an exception to the general rule that the Plan is responsible for adjudicating claims under Section 2.6.  While it may be true that this exception did not apply, this is a factual issue to be resolved at a later state as it is a reasonable inference for the motion to dismiss stage that because the Plan cited to BCBSM's duty under Section 2.5(l), the exception applied and based on the Plan's other allegations, BCBSM failed this duty.

The Complaint also adequately alleges that BCBSM breached the Termination Agreement as to BCBSM's duty to cooperate with the Plan.  It is undisputed for this Motion that under the Termination Agreement BCBSM initially had a duty to cooperate fully with the Plan in a defense against possible claims by Fairview.  Instead, BCBSM argues that it was relieved of its duty when the Plan rejected BCBSM's request for defense and indemnification.  The Complaint, however, alleges that BCBSM had already breached its duties before the Plan refused to defend and indemnify BCBSM.  The Complaint alleges that BCBSM informed Fairview that it would seek waiver of timely filing deadlines and indicates that BCBSM might have had some culpability or fault that would relieve the Plan

of its duties to defend and indemnify.  It is reasonable to infer from the Complaint that these actions breached BCBSM's duty to cooperate fully and that these breaches occurred before the Plan rejected BCBSM's request for defense and indemnification.  Therefore, even assuming BCBSM's duty to cooperate was relieved once the Plan refused to defend and indemnify it, the Complaint again adequately alleges at this stage that BCBSM also failed this duty.

Next, BCBSM argues that even if it breached the Termination Agreement, the Plan is not entitled to a declaratory judgment because these breaches did not void the Plan's duties to defend and indemnify BCBSM.  BCBSM claims this is so because the dispute for which BCBSM sought defense and indemnification did not directly result from these breaches.  Section 4.4 of the Termination Agreement relieves the Plan of its defense and indemnification duties if the obligations "result directly from the breach of [BCBSM] of any obligations of [BCBSM] under this Agreement." (Compl. ¶ 76.)  The Complaint alleges that BCBSM failed its duty to reject the Claims, instead allowed submission of the Claims and maintained correspondence with Fairview that plausibly could have resulted in Fairview continuing to seek payment on the Claims.  It is, therefore, plausible that the Fairview's ongoing action seeking payment and other harms that the Plan alleges it has suffered result directly from BCBSM's alleged failures to fulfill its obligations under the Termination Agreement.  Whether this is in fact the case and, if so, whether BCBSM's

alleged failures were material or whether they caused prejudice sufficient to relieve the Plan of its duties are factual issues not appropriate to resolve on a motion to dismiss.

Finally, BCBSM argues that the Complaint does not plead—and nor could the Plan plausibly plead—that the Plan was damaged by BCBSM's alleged breaches of the Termination Agreement. At this stage, the Complaint is sufficient for three reasons.

First, although the parties do not dispute that damages is an element of a breach of contract claim under Minnesota law, the Minnesota Supreme Court has recognized that a plaintiff need not necessarily plead damages to survive a motion to dismiss a breach of contract claim. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 n.5 (Minn. 2011). Therefore, the Court will decline to dismiss a claim at this stage on the basis that the plaintiff insufficiently pleaded damages. *See Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. 13-3579, 2014 WL 5325361, at *19 (D. Minn. Oct. 20, 2014).

Second, even if the Plan must allege damages, the Complaint adequately does so in at least two ways. A plaintiff must ultimately prove damages or some harm from the breach.[6] Nominal damages or demonstrating an invasion of a legal right are sufficient

---

[6] There is, however, occasionally some confusion as to how Minnesota law handles damages in breach of contract cases, leading to a lack of clarity as to how courts—including this Court—handle breach of contract claims under Minnesota law. *Compare FurnitureDealer.Net, Inc v. Amazon.com, Inc*, No. 18-232, 2022 WL 891473, at *30 (D. Minn. Mar. 25, 2022) ("[D]amages are a required element of a breach of contract claim under Minnesota law."), *with Josephs v. Marzan*, No. 21-0749, 2022 WL 45041, at *4 (D. Minn. Jan. 5, 2022) (listing breach of contract elements without including damages). Therefore, the Court will take this opportunity to clarify its understanding of Minnesota law on this issue.

_____

In resolving substantive issues of Minnesota state law, federal courts are bound by decisions of the Minnesota Supreme Court. *Integrity Floorcovering, Inc. v. Broan-Nuton, LLC*, 521 F.3d 914, 917 (8th Cir. 2008).  When a state supreme court has not directly addressed a question before the district court, the Court must attempt to predict how the state supreme court would decide and "may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data."  *Id.* (quotation omitted).

In the Minnesota Supreme Court's most recent discussion of the elements of a breach of contract claim, it did not list damages as an element.  *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).  In another recent case, the Minnesota Supreme Court noted that "We have recognized that the plaintiff may not have to allege that the breach caused damages in order to state a claim for breach of contract."  *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 n.5 (Minn. 2011) (citing as supportive precedent *Burns v. Jordan*, 44 N.W. 523, 524 (Minn. 1890), but as contrary precedent *Sloggy v. Crescent Creamery Co.*, 75 N.W. 225 (Minn. 1898)).

Since *Lyon*, the Eighth Circuit included damages in the list of elements in *Nelson v. American Family Mutual Insurance Co.*, 899 F.3d 475, 480 (8th Cir. 2018) (quoting *Gen. Mills Operations, LLC v. Five Star Custom Foods*, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013) (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000))).  Neither *Nelson* nor any of the cases it cited turned on whether the plaintiff suffered or alleged damages.  *See Nelson*, 899 F.3d at 480–81 (declining to incorporate a statutory duty into a contract); *Gen. Mills Operations*, 703 F.3d at 1107 ("At issue here is the third element—whether [the defendant] materially breached the contract."); *Parkhill*, 174 F. Supp. 2d at 961 ("[Plaintiff] has failed to establish even the threshold element of contract formation.").  Moreover, the Minnesota Supreme Court case that *Parkhill* cited for the elements—which through recursion ultimately forms the basis for the Eighth Circuit's holding in *Nelson* and *General Mills Operations*—does not include damages as an element: "In an action on a contract such as this the elements would be (a) the formation of the contract; (b) performance by plaintiff of any conditions precedent to his right to demand performance by defendant; and (c) a breach of the contract by defendant. These elements of the cause of action are the fundamental propositions which plaintiff must prove in order to establish a right of recovery."  *Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974); *see also Parkhill*, 174 F. Supp. 2d at 961 (citing *Briggs Transp.*, 217 N.W.2d at 200)).  Indeed, in the case that *Parkhill* cited to support its conclusion that a breach of contract must be material, the Minnesota Supreme Court affirmed a decision finding a breach of contract where the lower court held that the plaintiff **failed to establish damages** and awarded liquidated damages instead as provided for in the contract.  *Boatwright Const., Inc. v. Kemrich Knolls*, 238 N.W.2d 606, 607 (Minn. 1976).

Relying on Minnesota Court of Appeals cases, however, the Court has concluded that damages are a required element and predicted that the Minnesota Supreme Court would hold the same. *FurnitureDealer.Net*, 2022 WL 891473, at *30.  The Court sees no reason to change this prediction at this time.

This, however, does not fully resolve the issue because "damages" is a broad term that encompasses a wide range of possible types of damages.  *See, e.g.*, *Damages*, *Black's Law*

——————————

*Dictionary* (11ᵗʰ ed. 2019).  Many of these are not available for the typical breach of contract claim.  *See, e.g.*, *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn. 1996) ("In general, extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract[.]").

Superficially, there appear to be cases where the Minnesota Supreme Court affirms a dismissal because only nominal damages are available.  *E.g.*, *Sloggy*, 75 N.W. at 226; *Despatch Oven Co. v. Rauenhorst*, 40 N.W.2d 73, 80 (Minn. 1949).  However, a closer analysis of these cases finds that the Minnesota Supreme Court has adopted a "rule de minimis" wherein "a new trial will not be granted for a failure to assess merely nominal damages where no question of permanent right is involved."  *Smith v. Altier*, 238 N.W. 479, 480 (Minn. 1931) (quotation omitted); *see also Sloggy*, 75 N.W. at 226 ("[I]t is a suitable case for the application of the rule 'de minimis'"); *Despatch Oven Co.*, 40 N.W.2d at 80.  In other words, even if the verdict was incorrect or the lower court erred, where "[a]t most plaintiff would be entitled merely to nominal damages . . . a judgment for defendant will not be reversed on appeal*.*"  *Erickson v. Midland Nat. Bank & Tr. Co. of Minneapolis*, 285 N.W. 611, 612 (Minn. 1939); *see also Erickson v. Minnesota & Ontario Power Co.*, 158 N.W. 979, 981–82 (Minn. 1916) (collecting cases).

Instead, the Minnesota Supreme Court has held that "[a]bsent proof of actual loss only nominal damages are recoverable for breach of contractual obligation."  *Geo. Benz & Sons v. Hassie*, 293 N.W. 133, 138 (Minn. 1940); *see also Burns v. Jordan*, 44 N.W. 523, 524 (Minn. 1890) ("The [counter-claim] sufficiently alleges a breach of the contract, and upon that alone the defendants are entitled to nominal damages.").  More recently, the Eighth Circuit has affirmed awarding nominal damages on a Minnesota breach of contract claim.  *Larson v. City of Fergus Falls*, 229 F.3d 692, 696 (8ᵗʰ Cir. 2000).  Therefore, because Minnesota courts have allowed breach of contract claims to proceed for only nominal damages, the Court concludes that nominal damages are sufficient damages to maintain a breach of contract claim.

The question in a breach of contract claim then is not just whether there were actual damages but also whether there was a breach that invaded a legal right.  *Geo. Benz*, 293 N.W. at 137 ("The case stood as showing a breach of the covenant, but without proof of actual damage.  Of course the invasion of a legal right imports a damage. . . . Absent proof of actual loss only nominal damages are recoverable for breach of contractual obligation.").

Even if a party breaches a contract, but the other party suffered no damages and its legal rights were not invaded, no breach of contract claim will lie.  If, on the other hand, a party's legal rights were invaded even if the party suffered no actual damages, the nonbreaching party has a viable breach of contract claim.  This invasion is the harm that can be sufficient to satisfy the damages element of a breach of contract claim.

This conclusion is consistent with and explains why a party need not plead actual damages as discussed in *Park Nicollet Clinic*, 808 N.W.2d at 833 n.5, and *Arctic Cat, Inc. v. Polaris Industries Inc.*, No. 13-3579, 2014 WL 5325361, at *19 (D. Minn. Oct. 20, 2014).  The plaintiff need not plead actual damages because an invasion of the plaintiff's legal rights is itself a harm, even if only nominal.  It is also consistent with awarding liquidated damages absent proof of any actual damages.  *See Boatwright Const.*, 238 N.W.2d at 607.

contract damages under Minnesota law. *Geo. Benz & Sons v. Hassie*, 293 N.W. 133, 137–38 (Minn. 1940). The Complaint alleges an invasion of the Plan's legal right to have BCBSM adjudicate claims. And for the Plan's defense and indemnification duty, the Complaint alleges the Plan's legal right to full cooperation was invaded. Therefore, even if it does not allege actual harms, the Complaint sufficiently alleges the Plan's legal rights were invaded to permit nominal damages. Additionally, it is reasonable to infer from the Complaint that the Plan suffered damages because it alleges BCBSM should have adjudicated and denied the claim but because of BCBSM's failed to do so, the Plan had to take on the burden of doing so, depriving the Plan of the benefit of the bargain.

Finally, the Plan seeks a declaratory judgment that it need not defend or indemnify BCBSM. The declaratory judgment remedy is intended to settle an actual controversy before there is a breach of a contractual duty. *Maytag*, 687 F.3d at 1081. Its fundamental purpose then is to avoid incurring damages before resolving a dispute. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010). A party need not have already incurred damages to bring a declaratory judgment action for breach of contract even though damages are an element of a breach of contract claim. Therefore, to continue seeking a declaratory judgment regarding its duty to defend and indemnify BCBSM, the Plan need not allege that it has already suffered damages. To conclude otherwise would severely hamper the purpose of declaratory judgment actions. *Cf. MedImmune*, 549 U.S. at 129–30 (noting that declaratory judgments allow parties to avoid injuries).

In sum, the Complaint adequately alleges a breach of contract claim for damages and for a declaratory judgment against BCBSM. Resolution of many of the issues BCBSM raises are appropriate at a later stage. Therefore, the Court will deny BCBSM's Rule 12(b)(6) Motion.

## CONCLUSION

The Court will deny the facial attacks on the Court's subject matter jurisdiction for now. The Complaint adequately alleges the Court has federal question jurisdiction through ERISA and may exercise supplemental jurisdiction over state claims. The Complaint also sufficiently alleges the existence of a justiciable controversy. The Court will also deny BCBSM's 12(b)(6) motion as the Complaint adequately alleges a breach of contract claim.

By denying the motions to dismiss after remanding the companion case to state court, there are two cases proceeding on different tracks and in different courts addressing similar issues. This may create inconsistent rulings and duties as to the Plan's duties to BCBSM. Resolving these duties may also affect the positions and postures all three parties take. Therefore, to avoid these potential issues, the Court seeks the parties' guidance on how this case should proceed. To this end, the Court will direct the parties to meet and confer to discuss these issues and then file a joint report with the Court within 14 days of issuance of this Order providing each parties' position on the best path forward in this case.

As the Court requests the parties undertake this additional task, the Court will exercise its discretion under Rule 12(a)(4) to delay the deadline for Fairview and BCBSM to file their answers. The Court will order Defendants to serve their answers no later than 28 days after issuance of this Order.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant BCBSM, Inc.'s Motion to Dismiss [Docket No. 10] is **DENIED**;

2. Defendant Fairview Health Services' Motion to Dismiss [Docket No. 23] is **DENIED**;

3. Within 14 days from the date of this Order, the parties shall:

   a. Meet and confer to discuss the future management of this case, and

   b. File a joint report with the Court providing each party's position on the future management of this case; and

4. Within 28 days from the date of this Order, Defendants Fairview Health Services and BCBSM shall serve their Answers.

DATED: July 5, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

-32-